UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATHAN CLAUDE WALL #78404, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:23-cv-00850 |
| DICKSON COUNTY JAIL, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Nathan Claude Wall, an inmate of the Dickson County Jail in Charlotte, Tennessee filed this pro se civil rights complaint[1] under 42 U.S.C. § 1983 regarding the conditions of his confinement at the Dickson County Jail. (Doc. No. 1).

By Memorandum Opinion and Order entered on August 29, 2023, the Court reviewed the complaint pursuant to the Prison Litigation Reform Act ("PLRA") and found that it failed to state claims under 42 U.S.C. § 1983 upon which relief can be granted against the sole Defendant, the Dickson County Jail. Those claims were dismissed. (Doc. No. 7).[2] However, the Court permitted Plaintiff to amend his complaint, if he so desired, to identify the individuals responsible for the actions alleged in his complaint. The Court instructed Plaintiff to file any amended complaint no later than August 29, 2023. (Id. at. 5). Plaintiff timely filed a Supplement to his complaint (Doc.

---

[1] Plaintiff brought this case in the Middle District of Georgia, and the case was transferred here on August 15, 2023. (Doc. No. 4).

[2] The Court additionally granted Plaintiff's Application to Proceed In Forma Pauperis and assessed the filing fee to be collected pursuant to an installment plan. (Doc. No. 7).

1

No. 9), an Amended Complaint (Doc. No. 10),[3] and additional to the Amended Complaint (Doc. No. 11), which are now before the Court for PLRA screening.

I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). Id. § 1915A(b).

In screening the complaint as required by these statutes, the court applies the same standard as under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). The court accepts the "well-pleaded allegations in the complaint as true" and determines if those allegations "'plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). The court holds a pro complaint to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).

---

[3] Under the "prison mailbox rule" of Houston v. Lack, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in Richard v. Ray, 290 F.3d 810, 812 (6th Cir. 2002) and Scott v. Evans, 116 F. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when he deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that Plaintiff filed his Amended Complaint on August 29, 2023, the date he deposited the Amended Complaint in the prison mail system (see Doc. No. 10 at PageID# 42), even though the Clerk of Court received and docketed the amended complaint on September 11, 2023.

2

II.     Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."  To state a claim under Section 1983, a plaintiff must allege two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Panama Heights, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

III.    Alleged Facts

On June 15, 2023, Dickson County jail chaplain Thomas Todd asked Plaintiff to disrobe in front of him and perform sexual favors for the chaplain. To incentivize Plaintiff to keep quiet, Todd provided Plaintiff with e-cigarettes and tobacco.

Plaintiff was unknowingly administered "an overdose of a drug called Tranx that was smuggelled [sic] in from staff and placed in [inmates'] food." (Doc. No. 10 at 9). While overdosing, Plaintiff fell and broke his tooth. Unidentified individuals administered eight Narcan shots to Plaintiff, which has caused him to be "not the same person [he] used to be." (Id. at 5). Plaintiff believes that staff is trying to kill him. (Id.) Plaintiff's tooth "is continuously hurting daily", and he has been unable to obtain what he believes to be appropriate treatment. (Id. at 10). Head Nurse Kim gave Plaintiff one dose of ibuprofen for pain.

After filing this lawsuit, unspecified jail officials have retaliated against Plaintiff by reading Plaintiff's incoming and outgoing mail, both legal and personal in nature. Plaintiff is out of paper, envelopes, and stamps, and unspecified jail staff refuse to provide Plaintiff with any. In addition, unidentified individuals have placed "a mouse's tail cut up" and a cockroach in Plaintiff's food.

(Doc. No. 10 at 8). As a result of these incidents and the Tranx overdose, Plaintiff often declines to eat and has lost 20 pounds.

On June 21, 2023, Lieutenant Huppe moved Plaintiff out of his cell and into lockdown "for something [he] had nothing to do with." (Id. at 7). This move resulted in Plaintiff losing $40 worth of items he had recently purchased from the commissary. Plaintiff was again placed in lockdown on July 5, 2023, and July 27, 2023 based on false allegations. Plaintiff believes Sergeant Siddall and Deputy Harrington lied about Plaintiff's behavior.

On August 29, 2023, Plaintiff was placed on lockdown, where he stayed for at least 45 days, in a cell with no lights. During that time, Plaintiff ate in the dark. He was unable to read his Bible because there was no light. The toilet in the cell did not flush, and Plaintiff's feces stayed in the toilet in his cell for at least three weeks. Plaintiff was not able to file grievances or place emergency sick calls.

IV. Analysis

The Amended Complaint, as supplemented, names the Dickson County Jail, the Dickson County Sheriff's Office, Chaplain Thomas Todd, Lieutenant Heather Huppe, Sergeant Siddall, Deputy Harrington, Southern Health Partners, and Head Nurse Kim l/n/u as Defendants. (Doc. No. 10 at 2-3; Doc. No. 11 at 2)).

The Court already has dismissed Plaintiff's claims against the Dickson County Jail (see Doc. No. 7 at 4), and the Court will not reconsider that dismissal. See Fuller v. Cocran, No. 1:05-CV-76, 2005 WL 1802415, at *3 (E.D. Tenn. July 27, 2005) (dismissing Section 1983 claims against the Bradley County Justice Center on the same basis); Seals v. Grainger County Jail, No. 3:04CV606, 2005 WL 1076326, at *1 (E.D. Tenn. May 6, 2005) ("The Grainger County Jail, however, is not a suable entity within the meaning of § 1983.").

As to the Dickson County Sheriff's Office, "federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." Mathes v. Metro. Gov't, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (Trauger, J.) (collecting cases); accord Campbell v. Cheatham Cnty. Sheriff's Dep't, 511 F. Supp. 3d 809, 824-25 & n.12 (M.D. Tenn. 2021) (Crenshaw, C.J.) (dismissing Section 1983 claim against sheriff's department as redundant of the claim against county and noting that sheriff's departments "are not proper parties to a § 1983 suit"), aff'd, 47 F.4th 468 (6th Cir. 2022).[4]

Nor are sheriff's departments proper defendants for claims under Tennessee law. The Tennessee Code delineates sheriffs' responsibilities, Tenn. Code Ann. § 8-8-201, provides that sheriff's offices are to be funded by county governing bodies, id. § 8-20-120, and further provides that any person incurring an injury "resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves," id. § 8-8-302(a) (emphasis added). Plaintiff has not pointed to any authority under Tennessee law that would make the the Dickson County Sheriff's Department a proper entity to be sued under state law.

The Court concurs with the great weight of authority, finding that the Dickson County Sheriff's Office is not a suable entity under Section 1983 or state law. All claims against this Defendant will be dismissed.

---

[4] The appeal in Campbell addressed only whether the deputy whose motion for summary judgment was denied was entitled to qualified immunity. To this Court's knowledge, the Sixth Circuit has never expressly held that sheriff's departments in Tennessee are not government entities capable of being sued, but it has suggested as much on several occasions, and it has confirmed that, when a plaintiff erroneously sues "a non-juridical police department, the plaintiff often can easily fix this error by suing the city or county that operates the department." Lopez v. Foerster, No. 20-2258, 2022 WL 910575, at *6 (6th Cir. Mar. 29, 2022) (citing Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994)).

A. *Retaliation*

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. See Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999). To state a First Amendment retaliation claim, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (quoting Thaddeus-X, 175 F.3d 378, 394).

Plaintiff alleges that, after filing this lawsuit, unspecified jail officials retaliated against him by reading his incoming and outgoing mail, refusing to provide Plaintiff with materials without which he cannot send legal mail to the Court, and placing a mouse tail and a cockroach in Plaintiff's food. For purposes of the PLRA screening, the Court finds that these allegations could support non-frivolous claims of retaliation under Section 1983, but the complaint does not identify which jail official(s) engaged in the alleged retaliatory behavior. "It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints." Baggett v. Fuson, No. 3:22-CV-00137, 2022 WL 1256663, at *4 (M.D. Tenn. Apr. 27, 2022) (citing Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014)). Consequently, Plaintiff's retaliation claims must be dismissed; however, the Court will dismiss these claims without prejudice, and Plaintiff may seek permission from the Magistrate Judge, if he

6

Case 3:23-cv-00850   Document 18   Filed 06/24/25   Page 6 of 17 PageID #: 80

so chooses, to file an amended complaint in which he identifies by name the individuals responsible for the alleged retaliatory acts described above.[5]

B. *Medical Care*

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). Failure to provide medical and dental care may give rise to a violation of a prisoner's rights under the Eighth Amendment. See Bownes v. Washington, No. 14-11691, 2023 WL 424259, at *9 (E.D. Mich. Jan. 26, 2023) (noting that both medical and dental care are covered by the Eighth Amendment). A claim of deliberate indifference to a prisoner's needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical or dental need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. Deliberate indifference "entails something more than mere negligence," Farmer, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

---

[5] No additional PLRA screening will be required, as the Court already has found that the allegations of the Amended Complaint would be sufficient to survive the PLRA screening had Plaintiff named the appropriate individual(s).

medical treatment." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id.; Estelle, 429 U.S. at 107 (prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation). Generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Here, Plaintiff alleges that Head Nurse Kim provided Plaintiff with a single ibuprofen pill for his broken tooth, which Plaintiff believes did not adequately address his pain. This allegation reflects a dispute over the adequacy of treatment or a difference of opinion regarding diagnosis or treatment, neither of which rises to the level of an Eighth Amendment violation. Westlake, 537 F.3d at 860 n.5. Consequently, the allegations against Nurse Head will be dismissed for failure to state Section 1983 claims upon which relief can be granted.

The Amended Complaint also names as a Defendant Nurse Head's employer, Southern Health Partners. Southern Health Partners appears to be the entity responsible for providing medical care to inmates at the Dickson County Jail. Because Southern Health Partners performs a traditional state function in providing medical care to state inmates, it acts under the color of state law and can be sued under Section 1983. See Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). For Southern Health Partners to be liable under Section 1983, however, Plaintiff must allege that there is a direct causal link between a policy or custom of Southern Health Partners and the alleged constitutional violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691

(1978). There are no policy or practice allegations in the Amended Complaint regarding Southern Health Partners. Thus, Plaintiff fails to state a deliberate indifference to medical or dental care needs claim under Section 1983 against Southern Health Partners. Any such claim will be dismissed.

      C.     *Sexual Abuse/Attempted Sexual Abuse*

The Sixth Circuit has held that "sexual abuse of inmates" is generally "sufficiently serious" to satisfy the objective component of an Eighth Amendment claim. Rafferty v. Trumbull Cnty., Ohio, 915 F.3d 1087, 1094 (6th Cir. 2019). "Inmates are generally regarded as unable to consent to sexual relations with prison staff." Id. This is because the power dynamics between prisoners and guards make it difficult to discern consent from coercion. See Franklin v. Franklin Cnty, Ky., No. 3:19-CV-00050-GFVT-CJS, 2023 WL 1978907, at *5 (E.D. Ky. Feb. 13, 2023) (citing Wood v. Beauclair, 692 F.3d 1041, 1047 (9th Cir. 2012) ("Prisoners have no control over most aspects of their daily lives . . . . They depend on prison employees for basic necessities, contact with their children, health care, and protection from other inmates.")).

Plaintiff alleges that Jail Chaplain Thomas Todd asked Plaintiff to disrobe in front of him and perform sexual favors then coerced Plaintiff not to tell anyone by giving him e-cigarettes and tobacco. Construing the pro se complaint liberally, as the Court must at this stage of the proceedings, the Court finds that these allegations state a colorable Eighth Amendment claim under Section 1983 against Chaplain Todd in his individual capacity based on his attempts to engage in sexual behavior with an inmate and bribe the inmate into not reporting Todd's conduct. Of course, Plaintiff must ultimately prove his allegations but, for now, this claim survives the required PLRA screening.

D.  *Conditions of Confinement*

The Constitution does not protect a prisoner from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. Rhodes v. Chapman, 452 U.S. 337 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. Grubbs v. Bradley, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment under the Eighth Amendment. Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984).

Plaintiff alleges he was in lockdown for at least 45 days. The lockdown cell had no light; thus, Plaintiff ate in the dark, and he was unable to read his Bible. The toilet in his cell did not flush, and Plaintiff's feces was in the toilet in his cell for at least three weeks. These allegations could be reasonably viewed as rising to the level of cruel and unusual punishment; however, Plaintiff has failed to identify the specific individual(s) responsible for Plaintiff's conditions of confinement in lockdown. Therefore, Plaintiff's conditions of confinement claims will be dismissed without prejudice, and Plaintiff may seek permission from the Magistrate Judge to file an amended complaint for the purpose of identifying the individual(s) responsible.

E.  *Due Process*

To the extent that Plaintiff asserts that his period in lockdown violated his due process rights, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. See Meachum v. Fano, 427 U.S. 215, 225 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty

interest protected by the Due Process Clause. Id. at 484. According to the Sandin Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or will impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 486-87; see also Jones v. Baker, 155 F.3d 810, 812 (6th Cir. 1998); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt v. Helms, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." Harden–Bey v. Rutter, 524 F.3d 789, 794 (6th Cir. 2008).

With regard to the nature of Plaintiff's stay in segregation, the Court already has determined that the complaint states an actionable claim that the conditions of his segregated confinement rose to the level of an Eighth Amendment violation. With regard to the duration of Plaintiff's confinement in segregation, the Supreme Court concluded in Sandin that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in segregation for a relatively short period of time does not require the protections of due process. Rimmer-Bey, 62 F.3d at 790-91; see Joseph v. Curtin, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit also has held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. See, e.g., Jones, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); Mackey v. Dyke, 111 F.3d 460 (6th Cir. 1997) (one

11

Case 3:23-cv-00850   Document 18   Filed 06/24/25   Page 11 of 17 PageID #: 85

year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). But cf. Selby v. Caruso, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); Harden-Bey, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); Harris v. Caruso, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

More development of the record is needed to determine whether Plaintiff's 45-day (or longer) period of segregation under the conditions described in the complaint constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. 472, 486-87. Therefore, this claim would be permitted to proceed had Plaintiff named the individual(s) responsible for the duration and conditions of his confinement. Based on the current record, however, Plaintiff's due process claims will be dismissed without prejudice. Plaintiff may seek permission to file an amended complaint in which he identifies by name the individuals responsible the conditions of his confinement.

    F.    *Alleged Unfounded Disciplinary Charges*

Plaintiff alleges that he was placed in lockdown on July 5, 2023, and again on July 27, 2023, based on false allegations by Sergeant Siddall and Deputy Harrington. The Amended Complaint intimates that Lieutenant Huppe also had involvement in Plaintiff's placement in lockdown.

Inmates possess no right to be free from charges or convictions of prison disciplinary offenses. Wolff, 418 U.S. at 564-71. This is true even if the charge later turns out to be unfounded. Cromer v. Dominguez, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct

12

filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); Person v. Campbell, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."). Therefore, none of the allegations related to Plaintiff's disciplinary offenses state a claim under Section 1983, and these claims against Huppe, Siddall and Harrington in their individual capacities will be dismissed.

      G.      *Taking of Commissary Items/Deprivation of Property*

The Due Process Clause of the Fourteenth Amendment prohibits public officers from unlawfully taking a person's property. However, the Supreme Court has held that, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. See Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Sixth Circuit has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted. See Brooks v. Dutton, 751 F.2d 197, 199 (6th Cir. 1985).

The complaint does not allege that Tennessee post-deprivation remedies are inadequate. Neither does it allege that Plaintiff has utilized the state post-deprivation remedies available to him. Thus, his Due Process claim against Lieutenant Huppe will be dismissed.

      H.      *Interference with Mail*

A prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." Sallier v. Brooks, 343 F.3d 868, 873-74 (6th Cir. 2003). Prison officials can read all incoming and outgoing non-legal mail without offending

13

Case 3:23-cv-00850   Document 18   Filed 06/24/25   Page 13 of 17 PageID #: 87

the Constitution. See Meadows v. Hopkins, 713 F.2d 206, 208-11 (6th Cir. 1983). But when a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003) (citing Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996)).

Here, Plaintiff alleges that unspecified jail officials are reading his incoming and outgoing mail, both personal and legal in nature. For purposes of the PLRA screening, the Court finds that these allegations could support non-frivolous First Amendment claims under Section 1983, but the complaint does not identify which named Defendant(s) have opened and read Plaintiff's legal mail. See Baggett, 2022 WL 1256663, at *4 (citing Green, 2014 WL 1806997, at *4). Consequently, Plaintiff's interference with legal mail claims must be dismissed; however, the Court will dismiss these claims without prejudice, and Plaintiff may seek permission to file an amended complaint in which he identifies by name the individuals responsible for opening and reading his legal mail.

I. *Access to Courts*

To the extent Plaintiff claims that postage and other mailing materials are not provided to him for free, Plaintiff has no constitutional right to obtain free postage or materials to send non-legal mail. See, e.g., Argue v. Hofmeyer, 80 F. App'x 427, 429 (6th Cir. 2003) ("Even as an indigent inmate, [the plaintiff] had no constitutional right to free postage for nonlegal mail."); Brown v. Crowley, No. 99-2216, 2000 WL 1175615, at *3 (6th Cir. Aug. 10, 2000) ("The First Amendment does not compel prison officials to provide indigent prisoners with unlimited free postage and materials for non-legal mail.").

However, it is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977). In Bounds, the Supreme Court noted that, in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." Id. at 824-25. Nevertheless, an indigent prisoner's constitutional right to legal resources and materials is not without limit. To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Talley-Bey v. Knebl, 168 F.3d 884, 886 (6th Cir. 1999); Knop, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. Lewis, 518 U.S. at 351-53; see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff has not alleged that he has been prejudiced in filing this instant lawsuit or has suffered any litigation related detriment to either this case or another case due to any Defendant failing to provide Plaintiff with a writing implement, paper, and/or stamps. Plaintiff has submitted a complaint, amended complaint, supplement to his complaint, and an application for leave to proceed in forma pauperis. Thus, because the Plaintiff has not shown that he sustained an actual injury in his efforts to litigate, he fails to state a claim for denial of his right of access to the courts. Plaintiff's denial of access to courts claims will be dismissed.

V.    Conclusion and Referral

The Court has conducted the required PLRA screening of the Amended Complaint and finds that it states a colorable Eighth Amendment claim under Section 1983 Jail Chaplain Thomas Todd in his individual capacity. That claim shall proceed.

However, the Amended Complaint fails to state claims upon which relief can be granted as to the following Section 1983 claims: all claims against the Dickson County Sheriff's Office; Plaintiff's Eighth Amendment claims against Nurse Head in her individual capacity and against Southern Health Partners; Plaintiff's claims against Lieutenant Huppe, Sergeant Siddall, and Deputy Harrington in their individual capacities challenging Plaintiff's disciplinary charges; Plaintiff's claims against Lieutentant Huppe concerning the deprivation of Plaintiff's commissary items; and Plaintiff's First Amendment access to court claims against all individual Defendants. These claims and Defendants therefore are **DISMISSED WITH PREJUDICE**.

The allegations in the Amended Complaint pertaining to the conditions of Plaintiff's confinement, due process, interference with mail, and retaliation could state colorable Section 1983 claims, but Plaintiff has failed to identify the specific individual(s) responsible. Consequently, these claims are **DISMISSED**. However, the dismissal is **WITHOUT PREJUDICE**, and Plaintiff may seek permission from the Magistrate Judge to file an amended complaint in which he identifies by name the individual(s) responsible.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each remaining Defendant. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons(es) to the U.S. Marshals Service for service on Defendants. Fed. R. Civ. P. 4(b) and 4(c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any

16

Case 3:23-cv-00850   Document 18   Filed 06/24/25   Page 16 of 17 PageID #: 90

pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE