# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| NATHAN C. WALL, | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 3:23-cv-00850** |
| v. | ) | **Judge Crenshaw / Frensley** |
| | ) | |
| THOMAS TODD, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Thomas Todd's Motion for Summary Judgment. Docket No. 40. For the reasons set forth below, the undersigned recommends Defendant's Motion (Docket No. 40) be **GRANTED**.

### I.  BACKGROUND

Plaintiff is a pro se prisoner litigant who alleged several claims against several defendants, including Defendant Todd, who was the chaplain at Dickson County Jail (the "Jail") for a period during Plaintiff's incarceration there. Docket Nos. 10, pp. 2–3; 11, p. 2. The Court dismissed most of Plaintiff's claims, and the only remaining one is an Eighth Amendment claim under § 1983 against Defendant Todd in his individual capacity based on allegations of sexual abuse/attempted sexual abuse against Plaintiff. Docket No. 18, pp. 9, 15–16.

Defendant filed the present Motion for Summary Judgment and supporting documents on May 26, 2026. Docket Nos. 40–43. The Statement of Undisputed Facts (Docket No. 42) relies on Plaintiff's Deposition of April 9, 2026 (Docket No. 43-2) and the Affidavit of Dwayne Hayes, Chief Jailer at the Jail during the alleged incidents (Docket No. 43-1). Defendant rendered his

Statement of Undisputed Facts into narrative form in his Memorandum in Support, quoted here:[1]

> Plaintiff, Nathan Wall, was an inmate in the Dickson County Jail (hereinafter "the Jail") from June 3, 2023, to September 24, 2025. *See* Statement of Undisputed Material Facts (hereinafter "SUMF"), ¶ 1. Defendant, Thomas Todd, was the Chaplain at the Dickson County Jail during a portion of Plaintiff's incarceration. SUMF, ¶ 3. Defendant Thomas Todd stopped acting as the Jail Chaplain at the end of July, 2023. SUMF, ¶ 4.
>
> About three weeks after Plaintiff arrived at the Jail, sometime in early July of 2023, he went to see Chaplain Todd for the first time to ask him about applying to get into rehab. SUMF, ¶ 5. During this meeting, Chaplain Todd asked Plaintiff if he was gang affiliated, and Plaintiff said he was not. SUMF, ¶ 6. Plaintiff has sixty (60) tattoos all over his body, and Chaplain Todd asked if he could see Plaintiff's tattoos to confirm he has no gang affiliation. SUMF, ¶ 7. Plaintiff said he did not have any problem with that, and he started to undress. SUMF, ¶ 8. Chaplain Todd told Plaintiff to take off his pants too and started "looking at [Plaintiff] kind of weird" after Plaintiff complied. SUMF, ¶ 9. This made Plaintiff uncomfortable. SUMF, ¶ 10. Plaintiff told Chaplain Todd he wanted to leave and Chaplain Todd said "Here. Just take you a couple e-cigs. . . Just don't say nothing to nobody about this. I'm going to get you in rehab" and Plaintiff left. SUMF, ¶ 10-11.
>
> Sometime between July 5th and 10th of 2023, after Plaintiff's first meeting with Chaplain Todd, Corrections Officer Wilson took Plaintiff to the chapel to see Chaplain Todd a second time. SUMF, ¶ 12. The corrections officer came to Plaintiff's cell and said "do you want to go see the Chaplain?" and Plaintiff said "Yeah." SUMF, ¶ 13. When Plaintiff got to the chapel, Chaplain Todd started talking to Plaintiff about getting him into a different rehab facility and Plaintiff said "Well, what have I got to do?" Chaplain Todd said "Well, what do you want to do?" and started unbuckling his belt. SUMF, ¶ 14. Plaintiff said "No, I'm not going to do that . . ." SUMF, ¶ 15. Then Plaintiff left and walked back to his cell. SUMF, ¶ 16. Plaintiff went back a third time to see Chaplain Todd to get baptized. SUMF, ¶ 17. Plaintiff had to get fully undressed before Chaplain Todd gave him the baptismal jumpsuit to change into for his baptism. SUMF, ¶ 17. When Plaintiff got out of the baptismal tub, he had to get fully undressed before Chaplain Todd handed him a towel to dry off. SUMF, ¶ 18. This made Plaintiff feel uncomfortable. SUMF, ¶ 18.
> . . .
> Inmates at the Dickson County Jail, including Plaintiff, used a kiosk system to write grievances, requests and sick call requests, and to order some commissary items. SUMF, ¶ 21. Inmates are informed of the process for filing grievances through the inmate handbook, which is given to inmates upon booking and accessible via the Jail kiosk system. SUMF, ¶ 22. Plaintiff was very familiar with the grievance system at the Dickson County Jail and testified he submitted "[p]lenty of them." SUMF, ¶ 23. In his Complaint (Doc. 10, PageID# 39), Plaintiff said he could not

---

[1] Defendant states that the following facts are undisputed for purposes of summary judgment only. Docket Nos. 41, p. 2 n.1; 42, p. 1.

2

file any more grievances due to him being in lockdown in "the dungeon." SUMF, ¶ 24. However, Plaintiff testified in his deposition he was able to use the kiosk while in lockdown in the dungeon, and he filed grievances which specifically reference him being in the dungeon at the time they were filed. SUMF, ¶ 25. Specifically, Plaintiff filed eighty-nine (89) grievances through the kiosk system during his incarceration at the Jail. SUMF, ¶ 26. Plaintiff never filed a grievance regarding Chaplain Tom Todd during his incarceration at Dickson County Jail. SUMF, ¶ 27. Plaintiff, Nathan Wall, did not request medical treatment related to any interaction with Thomas Todd. SUMF, ¶ 28. Plaintiff, Nathan Wall, did not request counseling or therapy while an inmate in Dickson County Jail. SUMF, ¶ 29. Plaintiff, Nathan Wall, did not make any requests to be kept away from Thomas Todd while an inmate at Dickson County Jail. SUMF, ¶ 30. To the contrary, Plaintiff saw Chaplain Todd voluntarily on the three (3) occasions that make up this lawsuit.

Docket No. 41, pp. 2–4.

On June 9, 2026, Plaintiff filed an "Amended Complaint and Response to Summary Judgement [*sic*]" and an Addendum thereto which made new factual assertions. Docket Nos. 49, 50. In particular, Plaintiff asserted that Defendant not only proposed engaging in sexual activities with him but did in fact do so, and that Plaintiff was coerced to consent to acquire tobacco products from Defendant. Docket No. 49, pp. 1–2. He also explained that he did not allege this earlier because he believed his family would shun him and other inmates would attack him if they discovered his sexuality. *Id.* at 1–3. Finally, he made the following allegations regarding grievances: "on these grievances I wrote at the jail I didn't send to the right people because our kiosk was broken and when you push a certain place for it to go It went where it wanted to" and "I didn't write Grievance [*sic*] to keep him away From me because he quit and I didn't need to stay away from him he was no longer able to come back to the jail." *Id.* at 4; Docket No. 50.

On June 17, 2026, Defendant filed a Reply (Docket No. 51) which made no new factual assertions and whose legal arguments are addressed below, together with those in the Memorandum. Plaintiff then filed two pleadings. The latter pleading (Docket No. 53) alleges no new facts, while the former (Docket No. 52) alleges that Defendant left the Jail to avoid prosecution for his alleged deeds and that the alleged incidents caused several issues for Plaintiff,

3

including mental health problems, his placement in protective custody (which prevents him from getting extra time credits), and confusion regarding his Christian faith.

## II.   DEFENDANT'S ARGUMENTS

In addition to the Statement of Undisputed Material Facts discussed above, Defendant's Motion is supported by a Memorandum of Law. Docket No. 41. Defendant makes three arguments in support of his Motion; as discussed below, however, the undersigned decides based on Defendant's statutory arguments alone, so his arguments against the merits of Plaintiff's Eighth Amendment claims are not recounted here.

Defendant makes two arguments under the Prisoner Litigation Reform Act ("PLRA").[2] First, Defendant argues that this lawsuit itself is barred under 42 U.S.C. 1997e(a) of that act. Docket No. 41, pp. 11–13. Specifically, he argues that Plaintiff failed to exhaust the available administrative remedies—which, under § 1997e(a), is a prerequisite to bringing this suit—because he never filed a grievance against Defendant. *Id.* He argues that Plaintiff's successful filing of 89 unrelated grievances during his incarceration refutes any potential claim that the Jail's grievance system was "unavailable" under the PLRA (which would excuse the exhaustion requirement). *Id.* at 12–13.

Second, Defendant argues that all remedies requested by Plaintiff are precluded. He argues that Plaintiff cannot recover the monetary damages he requested because he has not alleged a "physical injury or the commission of a sexual act" as required by 42 U.S.C § 1997e(e) of the PLRA. Docket No. 41, pp. 9–11. While Plaintiff's response to the Motion alleged that Defendant did in fact commit sexual acts with Plaintiff (Docket No. 49, pp. 1–2), Defendant argues in his

---

[2] A PLRA screening has not been conducted.

Reply that this allegation cannot be used to defeat summary judgment. Docket No. 51, pp. 2–4. Specifically, he argues this allegation contradicts Plaintiff's deposition testimony—in which Plaintiff did not mention any sexual contact—and that "[a] party cannot create a genuine issue of material fact for purposes of summary judgment by presenting an affidavit that contradicts deposition testimony." Docket No. 51, p. 2 (citing *McNeil v. Sonoco Prods. Co.*, 2012 U.S. Dist. Ct. LEXIS 44448, 2012 WL 1038767, at *3 (W.D. Tenn. March 27, 2012); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). Besides monetary relief, Defendant argues that "[t]o the extent Plaintiff seeks any injunctive relief, such claim is moot, as he is no longer an inmate at the Dickson County Jail and Defendant has not worked at the Jail since the end of July, 2023." Docket No. 41, p. 11.

In addition to these arguments, Defendant contends in his Reply that Plaintiff's failure to respond to each of Defendant's numbered undisputed material facts, as required by Local Rule 56.01(e), necessitates that the Court deem each fact undisputed under Local Rule 56.01(g). Docket No. 51, pp. 4–5.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. . . . The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the non-moving party's case.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th

5

Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether there is evidence on which a trier of fact could reasonably find for the non-moving party, *see id.* at 252, but the "'mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient' to survive summary judgment." *Rodgers*, 344 F.3d at 595 (quoting *id.*)).

Moreover, "mere conclusory allegations are not sufficient to withstand a motion for summary judgment." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). Accordingly, "[a] party asserting that a fact . . . is genuinely disputed *must support the assertion by . . . citing to particular parts of materials in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
>
> (4) issue any other appropriate order."

Fed. R. Civ. P. 56(e).

## IV.    DISCUSSION

6

The undersigned recommends granting summary judgment for Defendant. Plaintiff's post-deposition allegations are not considered in evaluating the Parties' arguments, and under the factual assertions which are considered, Defendant is entitled to judgment as a matter of law under the PLRA.[3] Because this case may be disposed on these statutory grounds, the merits of Plaintiff's Eighth Amendment claim are not evaluated pursuant to the doctrine of constitutional avoidance.

### A.       The Admissibility of Plaintiff's Post-Deposition Allegations

The admissibility of Plaintiff's allegations of sexual acts committed by Defendant and their alleged negative effects (*see* Docket No. 49) is addressed first because it affects the merits of the Parties' arguments. Under the two-step *Aerel* framework discussed below, the undersigned finds that while, under the first step, these allegations are not "directly contradictory" to Plaintiff's deposition testimony, the factors under the second step weigh in favor of exclusion. Accordingly, the post-deposition allegations will not be considered in the sections subsequent to this one.

As an initial matter, the undersigned does not decide whether the Plaintiff's post-deposition allegations should be disregarded based on Defendant's Local Rule arguments. Local Rule 56.01(g) provides that a movant's assertions of fact are deemed undisputed if a *timely* response is not filed by the non-movant, but Plaintiff's response was timely. The issue with Plaintiff's response is that it was *improper* under Local Rule 56.01(e)(1) because it did not "contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's numbered undisputed material facts." But unlike Rule 56.01(g), the Local Rules do not state that a violation of Rule 56(e)(1) results in the movant's assertions being deemed undisputed. Thus, whether the

---

[3] This shall not be construed as implying that the PLRA defenses would fail if the post-deposition allegations were considered. In particular, the failure to exhaust argument is not affected by the admissibility of these allegations.

allegations should be considered is only analyzed under Sixth Circuit caselaw regarding contradictory post-deposition allegations.

In this Circuit, "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (establishing this general principle)). The *Reid* rule "does not, however, permit a district court to strike or 'disregard a party's affidavit merely because it conflicts *to some degree* with an earlier deposition.'" *Aerel*, 448 F.3d at 908 (emphasis in original) (quoting *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893–94 (5th Cir. 1980) (holding that the district court erred in refusing to consider an affidavit that was "not inherently inconsistent" with the party's deposition testimony)). Nevertheless, the purpose of the *Reid* rule is to "distinguish[] legitimate efforts to supplement the summary judgment record from attempts to create a sham issue of material fact," *Id.*, even if the conflict is not a direct contradiction. Accordingly, the Sixth Circuit has developed the following framework:

> [A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. . . . A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. *See* [*Miller v.*] *A.H. Robins*, 766 F.2d [1102, 1104 (7th Cir. 1985)] (["An inconsistent affidavit may preclude summary judgment . . . if the affiant was confused at the deposition and the affidavit explains those aspects of the deposition testimony or if the affiant lacked access to material facts and the affidavit sets forth the newly-discovered evidence"]).

> If . . . there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit "constitutes an attempt to create a sham fact issue." *See Franks* [*v. Nimmo*], 796 F.2d [1230, 1237 (10th Cir. 1986)]. A useful starting point for this inquiry is the nonexhaustive list of factors articulated by the Tenth Circuit in *Franks*, where the court noted that the existence of a sham fact issue turns on

[1] "whether the affiant was cross-examined during his earlier testimony,

[2] whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and

[3] whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." *Id.*

*Aerel*, 448 F. 3d at 908–09 (paragraph breaks added).

Pertinently to the question of direct contradiction, the Sixth Circuit has refused to "expand[] the *Reid* rule to cover a situation in which the later-filed affidavit revealed an *omission* in the party's deposition testimony . . . [b]ecause the deponent is under no obligation to volunteer information not fairly sought by the questioner." *Aerel*, 448 F.3d at 907 (emphasis added). Thus, "[w]hat amounts to a 'direct contradiction[]' . . . is narrowly defined. . . . At bottom, when the non-moving party was questioned generally, but not expressly, about a topic, a later affidavit providing greater detail does not directly contradict the prior testimony." *Abernathy v. TriHealth G LLC*, No. 1:22-CV-624, 2025 U.S. Dist. LEXIS 38476, 2025 WL 689333, at *3 (S.D. Ohio Mar. 4, 2025) (citing *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006)). The facts in *Aerel* and *Briggs* provide examples of such circumstances.

In *Aerel*, the plaintiff and defendant corporations signed a contract that did not include a certain term (which existed in all prior contracts between the parties) providing the plaintiff a right to commissions for orders placed during the contract term but not paid for until after termination; that term was replaced with one that expressly rejected post-term commissions. 448 F.3d at 901. One Cosentini, who signed the contract on behalf of the plaintiff, "testified in his deposition that he knew of the change in the language and was not pleased with it, . . . [but] signed the . . . contract voluntarily." *Id.* In the deposition, "he referred to discussions with [the defendant's] Sales

9

Director . . . , but [the defendant's] counsel quickly shifted the inquiry to topics other than Cosentini's discussions without fully exploring the issue." *Id.* at 909. In his subsequent affidavit, Cosentini mentioned an oral agreement with the Sales Director that he did not discuss in his deposition testimony, stating that the change in written terms "did not alter his ongoing oral understanding with [the defendant's] Sales Director . . . that [the plaintiff] would continue to receive commissions." *Id.* at 901–02. The Sixth Circuit concluded that this "did not directly contradict his deposition testimony, but rather revealed information that was not fully explored during that testimony," reasoning that it was "properly viewed as an 'attempt[ ] to explain' the oral understandings that were alluded to but not explored during the three-hour deposition." *Id.* at 909.

In *Briggs*, the plaintiff was asked in his deposition about a phone conversation with his manager and stated that he had expressed unhappiness with the fact that he was the only employee in his role who would have to relocate to get a promotion; that his manager responded "[w]ell, . . . you won't have a problem finding a job someplace else. . . . [T]here are other [employees in your role] who have much less time than you do in the postal service and would have a lot harder time finding a residual position if they weren't one of the successful bidders [for the promotion]." 463 F.3d at 512. The plaintiff stated in his subsequent affidavit that, during the phone call, his manager expressly identified one Jennifer Jendras among the less qualified employees who were being given the promotion (a fact omitted from the deposition testimony). *Id.* The Sixth Circuit concluded that this statement was not a direct contradiction, reasoning that "[w]hile Briggs was questioned generally about that [phone] conversation, he was not expressly asked what [his manager] had said to him during that conversation." *Id.* at 513.

In contrast to such circumstances, if a deponent was "asked specific questions about, yet denied knowledge of, the material aspects of [their] case," alleging them in a subsequent affidavit

10

will "directly contradict [the] deposition." *Powell-Pickett v. A.K. Steel Corp.*, 549 Fed. App'x 347, 353 (6th Cir. 2013). In *Powell-Pickett*, for example, the deponent, "[w]hen she was asked repeatedly what discrimination, retaliation, and harassment she had suffered, . . . said that she had no idea. . . . After [the defendant] moved for summary judgment, [she] submitted an affidavit in which she declared that she had endured 'a very, very, very hostile work environment' and in which she provided examples of alleged mistreatment." *Id.* at 349. The Sixth Circuit concluded that "[b]ecause [the plaintiff] was asked specific questions about, yet denied knowledge of, the material aspects of her case, the material allegations in her affidavit directly contradict her deposition." *Id.* at 353.

Here, the new facts that Plaintiff asserted should be excluded because even if the conflict between them and his deposition testimony is not a direct contradiction, the *Franks* factors weigh in favor of excluding them in any case.

The facts in this case fall somewhere in between those in *Aerel/Briggs* and those in *Powell-Pickett*. The allegations that Defendant engaged in sexual acts with Plaintiff constitute an omission like in *Aerel* and *Briggs*, and Plaintiff was never specifically asked whether sexual acts occurred. These considerations weigh in favor of finding no direct contradiction. On the other hand, Plaintiff was asked whether he told the examiner "everything that happened in the chapel when [Defendant] asked [him] to perform sexual favors," and he responded "[u]h-huh"; the examiner then asked "[s]o you declined when he asked you to do that, and then what happened?" and he said "I just left . . . I got out of there. I went back to my cell." Docket No. 43-2, p. 16. These are not specific questions like in *Powell-Pickett*, but it is a notable contradiction to affirm that testimony omitting allegations of sexual acts described "everything that happened," only to later allege that sexual acts occurred. And although it cannot be said that Plaintiff "denied knowledge of" these facts since

11

he was not specifically asked about sexual acts, they certainly constitute "material aspects of [his] case" which are conspicuously absent from the deposition. *Powell-Pickett*, 549 Fed. App'x at 353. These considerations weigh in favor of finding a direct contradiction. Because the nature of the contradiction is uncertain, however, and the evidence must be viewed in the light most favorable to Plaintiff, the undersigned finds that the contradiction is not direct and will proceed to the second step.

Although the undersigned finds that the contradiction is not direct, the four *Franks* factors weigh in favor of excluding. *See Aerel*, 448 F. a3d at 909 (citing *Franks*, 796 F.2d at 1237). The first factor weighs in favor of the Plaintiff, since he was not cross-examined, but the other two factors weigh against him significantly. Regarding the second factor, Plaintiff of course had access to the evidence during the deposition, and it was not newly-discovered, since it is testimony based on his own memory. As for the third factor, the allegation of sexual acts does not dispel any confusion about his deposition testimony but simply introduces additional allegations that were clearly implicated in the deposition examiner's questions. Plaintiff was asked if he told the examiner everything, and he said yes; this is not confusing, and the new allegations do not clarify this testimony.

What Plaintiff *did* explain is why he kept the new allegations to himself notwithstanding their pertinence to his claims; namely, because he feared the possibility of stigma from his family and abuse from other inmates in reaction to his sexuality. *See* Docket No. 49. The undersigned does not diminish these fears, but the factors do not contemplate excusing conflicting testimony for reasons such as these. Although the factors are identified as nonexhaustive, the nature of the enumerated factors indicate that the second step's purpose is to admit conflicting testimony which was not brought out in the deposition due to an excusable lack of knowledge about that evidence,

not a lack of willingness to disclose it. This is especially apparent in the second and third factors. As for the first factor, it clearly contemplates whether the deponent had the benefit of a lawyer present to ensure the deponent testified about facts he may not have had the legal acumen to perceive the pertinence of; this does not suggest that the deponent should be excused from withholding the most crucial facts of his case—which any laymen can perceive the pertinence of— after being asked if he testified to everything that occurred. It is understandable why one would be reluctant to share these experiences based on the fears Plaintiff described, but after Plaintiff took the significant step of bringing a lawsuit, he needed to be prepared to present the material aspects of his case of which he was aware while responding, under oath, to questions that clearly implicate them.

For these reasons, the allegations of sexual acts will not be considered in the following sections.

### B.    Defendant's PLRA Defenses

For two reasons, the undersigned finds that summary judgment is appropriate under 42 U.S.C. § 1997e of the PLRA. First, Defendant has met his burden to present facts demonstrating that this lawsuit is barred for failure to exhaust administrative remedies under § 1997e(a), and Plaintiff's response is insufficient to create a genuine issue for trial. Second, even if § 1997e(a) did not bar this suit, Plaintiff is precluded from receiving compensatory damages because he has not alleged a "physical injury or the commission of a sexual act" as required by § 1997e(e), and any claim for injunctive relief would be moot as Plaintiff is no longer incarcerated at the Dickson County Jail and Defendant does not work there anymore.

### 1.    Failure to Exhaust

The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C § 1997e(a). The United States Supreme Court has explained that, as a statute that employs mandatory language, "the PLRA establish[es] mandatory exhaustion regimes, foreclosing judicial discretion," and has "reject[ed] every attempt to deviate . . . from [the PLRA's] textual mandate." *Ross v. Blake*, 578 U.S. 632, 632, 639–40 (2016). Flowing from the textual requirement that administrative remedies be "available," however, the Supreme Court has identified three limited exceptions to this exhaustion requirement wherein administrative remedies are deemed "unavailable," obviating the need to exhaust them:

> First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
>
> . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.
>
> . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Id.* at 643–44 (citations omitted). The Supreme Court characterized exceptions beyond these three as "extra-textual" and outside the province of courts to create, regardless of the circumstances in any individual case. *See id.* at 637–39.

If such a remedial scheme is available, plaintiffs must exhaust it before bringing suit, and must "do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)

14

(emphasis in original)).

On summary judgment, Defendant's burden under § 1997e(a) is to show that there is an absence of evidence supporting either of the conclusions that administrative remedies were unavailable or that Plaintiff properly exhausted them. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) ("failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants. . . . Because the defendants moved for summary judgment on this defense, it was their burden to show that there was an absence of evidence to support the nonmoving party's case") (citing *Jones v. Bock*, 549 U.S. 199, 204 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed. App'x 885, 888 (6th Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). This may be done by presenting evidence that contradicts a conclusion favorable to the plaintiff; in *Napier*, for example, the plaintiff claimed that the grievance process of the defendant's detention facility was unavailable while he was imprisoned in another facility, but the defendant presented evidence contradicting the conclusion that this made the grievance process unavailable: "Nothing in the [facility's] policy explicitly prohibits inmates from filing grievances after they have been released from that facility" and "the defendants submitted evidence that a different prisoner has, in fact, filed a grievance at [the facility] while incarcerated elsewhere in the state." 636 F.3d at 225. The Sixth Circuit held that this showed an absence of evidence and that the defendants met their burden. *Id.*

If a defendant meets this burden, plaintiffs are "required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Here, Defendant's Statement of Undisputed Material Facts and the documents it relies on establish an absence of evidence that administrative remedies were unavailable. To begin with,

Chief Jailer Dwayne Hayes asserts that one exists in the form of Dickson County Jail's grievance system. Docket No. 43-1, pp. 1–2. Moreover, there is an absence of evidence supporting either of the three exceptions wherein a remedial scheme is deemed unavailable because, consistent with *Napier,* Defendant has submitted evidence contradicting each exception.

First, there is no evidence that the grievance system is a "simple dead end" because Plaintiff's record of grievances showcases several instances in which administrators at the Jail either fulfilled his requests, informed him of the proper procedures he would need to follow to address his concerns, or explained why his requests were being denied. *See generally* Docket Nos. 43-6, 43-9. Even in the light most favorable to Plaintiff, this indicates that the officers were not "unable or consistently unwilling to provide any relief to aggrieved inmates," *Ross*, 578 U.S. at 643.

Second, there is no evidence that the grievance system is "incapable of use" because Plaintiff had access to it and successfully used it to file several grievances. Chief Jailer Hayes avers that Plaintiff filed 89 grievances during his incarceration (Docket No. 43-1, p. 2) and Defendant's exhibits document 26 of these (*see* Docket Nos. 43-6, 43-9). This precludes any suggestion that the grievance system is "so opaque that it [is], practically speaking, incapable of use" or that "no reasonable prisoner can use" it. *Ross*, 578 U.S. at 643–44.

Third, the evidence discussed in relation to the first two exceptions also demonstrates an absence of evidence that "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In addition to showing an absence of evidence that the grievance procedure was unavailable, Defendant has shown an absence of evidence that Plaintiff properly exhausted it because Chief Jailer Hayes averred that Plaintiff "never filed a grievance regarding [Defendant]

16

during his incarceration at Dickson County Jail." Docket No. 43-1, p. 2. Docket No. 49. To the extent that Plaintiff's response can be interpreted as controverting these assertions, it still fails to create a genuine issue of disputed fact for two reasons.

Firstly, Plaintiff's statements fail to properly address Defendant's assertions of fact as required by Fed. R. Civ. P. 56(c), so they are treated as undisputed under Rule 56(e)(2). Rule 56(c)(1)(A) places the burden on Plaintiff to cite "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to support his assertions, and "mere conclusory allegations are not sufficient to withstand a motion for summary judgment." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff's response, however, consists of mere allegations and does not cite any of the required materials, in contrast to Defendant's assertions which rely on affidavits, documentary evidence, and Plaintiff's own deposition. The undersigned therefore treats Defendant's assertions of fact as undisputed pursuant to Fed. R. Civ. P. 56(e)(2).

Secondly, Plaintiff's statements would fail to create a genuine issue for trial even if they were not presented in a deficient form under Rule 56(c). Since Defendant met his burden, Plaintiff was "required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 248). But Plaintiff's response only makes vague references to grievances, and even if they were stated in a deposition or affidavit, for example, and interpreted in the light most favorable to him, such an interpretation would not be "significant probative evidence" and could not be convincing to a reasonable trier of fact: Plaintiff stated "on these grievances I wrote at the jail I didn't send to the right people because our kiosk was broken and when you push a certain place for it to go It went

17

where it wanted to" and "I didn't write Grievance [*sic*] to keep him away From me because he quit and I didn't need to stay away from him he was no longer able to come back to the jail." Docket No. 49, p. 4; Docket No. 50. Squaring these two statements together, the most generous interpretation of Plaintiff's narrative is that he submitted grievances against Defendant, though none specifically requested for Defendant "to stay away from [Plaintiff]" and none of the grievances against Defendant were sent in any case because of an issue with the kiosk. No reasonable factfinder could believe that 89 unrelated grievances from Plaintiff successfully went through, but that the system failed every time they pertained to Defendant. This is not significant probative evidence.

At the end of the day, the only "significant probative evidence" would be documentation of a grievance filed against Defendant, but there is none before the Court. Discovery has been conducted in this case, and Plaintiff had the opportunity to request that Defendant produce all of the grievances he filed if he believed some have been withheld. In fact, it was his burden to do so.

For these reasons, Defendant has met his burden to present facts establishing Plaintiff's failure to exhaust the available administrative remedies, and Plaintiff's response fails to create a genuine dispute regarding these facts. This lawsuit is therefore barred as a matter of law under § 1997e(a).

### 2. Preclusion of Remedies

Even if the lawsuit is not barred under § 1997e(a), however, Plaintiff is precluded from both compensatory and injunctive relief. The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Sixth Circuit and this Court have

interpreted this provision to prohibit compensatory damage awards absent a physical injury or sexual act.[4] *See Turner v. Bolden*, 8 F. App'x 453, 455 (6th Cir. 2001) ("defendants were entitled to judgment on Turner's claim for compensatory damages . . . because Turner had not suffered any physical injury, as required before compensatory damages can be awarded, pursuant to 42 U.S.C. § 1997e(e)"); *Hudson v. Thrasher*, No. 3:10-0963, 2011 U.S. Dist. LEXIS 140230, 2011 WL 5859558, at *3 (M.D. Tenn. Oct. 28, 2011) ("insofar as the plaintiff seeks compensatory damages for emotional distress or mental suffering, dismissal of such a claim is appropriate because the PLRA requires that any action for mental or emotional injury suffered while in custody is barred unless the prisoner can show he suffered a physical injury"), report and recommendation adopted, No. CIV. 3:10-0963, 2011 U.S. Dist. LEXIS 135159, 2011 WL 5860419 (M.D. Tenn. Nov. 22, 2011).

Here, Plaintiff has not alleged a physical injury, and his post-deposition allegations of sexual contact and consequent emotional injuries are not being considered. He is therefore precluded from recovering the monetary relief he requests. Defendant is also correct that "[t]o the extent Plaintiff seeks any injunctive relief, such claim is moot, as he is no longer an inmate at the Dickson County Jail and Defendant has not worked at the Jail since the end of July, 2023." Docket No. 41, p. 11.

Accordingly, no relief is available in this case, in addition to the fact that the suit itself is barred under § 1997e(a).

### C.  The Merits of Plaintiff's Eighth Amendment Claim

"Where a statutory or nonconstitutional basis exists for reaching a decision, as it does here,

---

[4] The subsequently cited cases were decided before the statute was amended in 2013 to include sexual acts in addition to physical injury; hence, they only mention the latter.

19

it is not necessary to reach the constitutional issue" because "Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues." *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) (citing *Ashwander v. Tenn. Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter")). Since summary judgment may be granted on statutory grounds under the PLRA, the merits of Plaintiff's Eighth Amendment claim will not be addressed.

## V. CONCLUSION

For the reasons discussed above, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 40) be **GRANTED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

20